UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAIRO ARIAS and
HADEEL ELSHESHAIY,

    Plaintiffs,

v.                                                  CASE NO.: 8:10-cv-721-T-23TBM

U.S. DEPARTMENT OF STATE, et al.,

    Defendants.
_____/

**ORDER**

The plaintiffs sue (Doc. 11) the U.S. Department of State; Hillary Rodham Clinton; Janice L. Jacobs; David T. Donahue; the U.S. Embassy in San Jose, Costa Rica; Anne Slaughter Andrew; Peter Brennan; Paul Birdsall; the U.S. Embassy in Tegucigalpa, Honduras; and Douglass R. Benning based on the defendants' "determination that Jairo Arias has accrued more than one year of 'unlawful presence' in the United States and thus is inadmissible to the United States under Section 212(a)(9)(B)(i)(II) ["Section 212(a)"] of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) [the "INA"]."  The complaint (Doc. 11) contains three counts, consisting of a putative claim (1) under the Administrative Procedure Act, 5 U.S.C. § 701, et seq.; (2) under the Mandamus Act, 28 U.S.C. § 1361; and (3) under the Due Process clause of the U.S. Constitution.  The defendants move (Doc. 13) to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, and argue (1) that the "doctrine of consular non-reviewability" deprives this court of subject matter jurisdiction and (2) that the plaintiffs fail to exhaust administrative remedies.

Allegations of the Complaint

In 1999, the plaintiff Jairo Arias ("Jairo"), sixteen and a native of Perez Zeledon, Costa Rica, traveled to the United States through the Mexican desert after speaking with a "coyote," "who sold [Jairo] a story of a better life in the United States." In the current lexicon of immigration, a "coyote" is a person who expedites unlawful entry into the United States from Mexico, i.e., a specialized trafficker in human beings. Upon Jairo's crossing the U.S. border (along with eighteen other people) and arriving in Tucson, Arizona, Immigration and Naturalization Service (the "INS") officials apprehended Jairo and his fellow travelers. The INS released Jairo on a $5,000.00 bond, and Jairo departed Arizona for Newark, New Jersey, "under the auspices of a network of 'coyotes.'" Jairo moved into an unfurnished apartment in Orange, New Jersey, with several other Costa Rican and Mexican individuals. While living in New Jersey, Jairo and others received daily transportation to "job sites" to perform exterior painting. Jairo received no payment beyond a $20.00, bi-monthly stipend for his labor, because (Jairo asserts) he "was working off the debt that he owed for the $5,000.00 bond." Contemporaneously and without Jairo's knowledge, an immigration judge in Newark held a removal proceeding in absentia and ordered Jairo's removal (the "1999 removal order") from the United States.

A year later, Jairo moved to North Carolina with German Solis, a fellow worker, and worked as a carpenter and as a painter. After a year in North Carolina, Jairo began a romantic relationship with Hadeel Elsheshaiy ("Hadeel"), a U.S. citizen. Three years later, Jairo and Hadeel married, after which the couple moved to Tampa, Florida, and

established a contracting business.  Additionally, Hadeel gave birth to the couple's son, Y.A., and Jairo began filing federal income tax returns.  Jairo inquired into his eligibility to "adjust status" and learned of the 1999 removal order.

On June 19, 2008, U.S. Immigration Customs and Enforcement ("ICE") officials arrested and detained Jairo.  Based on Jairo's not receiving notice of the hearing that resulted in the 1999 removal order, Jairo moved both to rescind the 1999 removal order and to stay removal.  The motion requested rescission of the order <u>nunc</u> <u>pro</u> <u>tunc</u> so that Jairo could voluntarily depart without prejudice to his ability to return to the United States upon approval of immigration (I-130 and I-129f) petitions.  Jairo alleges that "the order of voluntary departure which [he] sought was expressly contemplated to be entered <u>nunc</u> <u>pro</u> <u>tunc</u>, reflecting back to the 1999 removal hearings, at which time Arias was under 18 years old and as such was not subject to [Section 212(a) of the INA]."  The judge re-opened (Doc. 1-18) proceedings without comment based on the lack of notice to Jairo and transferred venue to the Broward Transitional Center.  On August 5, 2008, a judge at the Broward Transitional Center granted Jairo's request for a one-hundred-and-twenty-day pre-hearing voluntary departure.  On August 8, 2008, Jairo returned to Costa Rica.

On May 7, 2009, Jairo applied for a K-3 non-immigrant visa (the "non-immigrant application"), and on October 15, 2009, Jairo applied for an immigrant visa (the "immigrant application") with the U.S. Embassy in San Jose, Costa Rica (the "San Jose embassy").[1]  Jairo's immigrant application remains pending.  In August, 2009, Jairo's

---

[1] Hadeel filed on behalf of Jairo two petitions (I-129F and I-130) to apply for a K-3 visa, which
(continued...)

- 3 -

counsel contacted the State Department about the non-immigrant application, expressed concern about the delay in granting the application, and requested an advisory opinion. Around the same time, Hadeel inquired about the non-immigrant application during a visit to the consular division of the San Jose embassy. Hadeel learned that the San Jose embassy had referred the non-immigrant application to the U.S. Embassy in Tegucigalpa, Honduras, because the Tegucigalpa embassy "had jurisdiction over Costa Rica with respect to waiver issues arising from visa applications." In October and November, 2009, Hadeel corresponded by e-mail with an official at the San Jose embassy. In an e-mail, the official stated that "After a thorough review of the case and based on the INA law the Officer in charge has determined that Mr. Jairo Arias has been found inadmissable to the United States under Section 212(a)(9)(B)(i)(II) . . . ." This action ensued.

### Discussion

*1. Consular Adjudication of a Visa Application & Judicial Review*

Congress possesses plenary power "to make policies and rules for exclusion of aliens . . . . [and] has delegated conditional exercise of this power to the Executive [branch]." Kleindienst v. Mandel, 408 U.S. 753, 769-70 (1972) (Blackmun, J.). The executive's discretionary exercise of this power generally escapes judicial review. 408 U.S. at 770; see also United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543

---

[1](...continued)
permits the non-citizen spouse of a U.S. citizen to enter and remain in the U.S. during the processing of the non-citizen's application for permanent resident status. See Petition for Alien Fiance(e) and K-3/K-4 Nonimmigrant Visas, available at http://www.uscis.gov/. Hadeel's petitions received approval on April 8, 2009.

(1950) (finding that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."); De Castro v. Fairman, 164 Fed. App'x 930, 932-33 (11th Cir. 2006) (per curiam); Loza-Bedoya v. Immigration & Naturalization Serv., 410 F.2d 343, 347 (9th Cir. 1969) ("Congress has conferred upon consular officers authority to issue or withhold a visa. Such determination is not subject to either administrative or judicial review."); c.f. Ventura-Escamilla v. Immigration & Naturalization Serv., 647 F.2d 28, 31 (9th Cir. 1981) (finding that "cases alleging constitutional infirmities in the immigration laws are subject to judicial review."). However, Mandel permits judicial review if the denial of a visa application both (1) implicates the constitutional right of a U.S. citizen[2] and (2) lacks a facially legitimate and bona fide reason. 408 U.S. at 770 (finding that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."); see Bustamante v. Mukasey, 531 F.3d 1059, 1061-62 (9th Cir. 2008).

In Bustamante, a U.S. citizen and wife of a non-citizen sued after the denial of her husband's application for an immigrant visa. The consulate denied the husband's visa application based on the belief that the husband trafficked in controlled substances.

---

[2] See Shaughnessy, 338 U.S. at 542 (stating that "Admission of aliens to the United States is a privilege granted by the sovereign United States Government. Such privilege is granted to an alien only upon such terms as the United States shall prescribe."); Kliendienst v. Mandel, 408 U.S. 753, 762 (1972) ("an unadmitted and nonresident alien[] ha[s] no constitutional right of entry into this country as a non[-]immigrant or otherwise.").

- 5 -

The complaint alleged that the husband never trafficked in illegal drugs that the "the consular officials improperly conditioned the granting of a visa on [the husband's] agreement to become an informant." On a motion to dismiss, the district court declined to review the consular official's decision. Although recognizing the due process right to "[f]reedom of personal choice in matters of marriage and family life," <u>Bustamante</u> upholds dismissal based on a "facially legitimate and bona fide" reason for denying the visa. As <u>Bustamante</u> explains:

> [J]ose was denied a visa on the grounds that the Consulate "had reason to believe" that he was a controlled substance trafficker. This is plainly a facially legitimate reason, as it is a statutory basis for inadmissibility. 8 U.S.C. § 1182(a)(2)(C).
> . . .
> While the Bustamantes alleged in their complaint that Jose is not and never has been a drug trafficker, they failed to allege that the consular official did not in good faith believe the information he had. It is not enough to allege that the consular official's information was incorrect. . . . the Bustamantes' allegation that Jose was asked to become an informant in exchange for immigration benefits fails to allege bad faith; if anything, it reflects the official's sincere belief that Jose had access to information that would be valuable in the government's effort to combat drug trafficking.
> . . .
> Under <u>Mandel</u>'s limited inquiry, the allegation that the Consulate was mistaken about Jose's involvement with drug trafficking, and offered to make a deal with Jose on the basis of this mistaken belief, fails to state a claim upon which relief could be granted.

531 F.3d at 1062-63.

In this action, the plaintiffs (1) request a declaration "that the doctrine of consular non[-]reviewability does not extend to the statutory/constitutional question of whether Arias indeed does not require an unlawful presence waiver," (2) assert that the court must "assume jurisdiction under the <u>Mandel</u> test to determine whether a facially

- 6 -

legitimate and bona fide reason exists for the consular decision requiring Arias to obtain an unlawful presence waiver," and (3) argue that the court should assume jurisdiction based on the "unadjudicated immigra[n]t[] visa application" and Patel v. Reno, 134 F.3d 929 (9th Cir. 1988). In other words, the plaintiffs assert that requiring Jairo to apply for a waiver through "imposition of the waiver requirement" is unlawful because the decision to deny the non-immigrant visa is erroneous.

Each of the plaintiffs' arguments is unavailing. A review of the amended complaint reveals that in this instance the consular official possessed a facially legitimate and bona fide reason for denial of the non-immigrant visa based on a statutory factor that renders an alien inadmissible because of an alien's unlawful presence in the United States for a year or more. Although the plaintiffs assert that they requested a rescission nunc pro tunc of the 1999 removal order, neither order by an immigration judge reveals a nunc pro tunc rescission. Each order renders a decision with neither comment nor opinion. Based on the facts alleged, denial of the non-immigrant visa possesses a legitimate and bona fide foundation, which renders review under Mandel unavailable. Therefore, no jurisdiction exists to review the denial of the non-immigrant petition, even if the denial is erroneous or based on incorrect information.

Furthermore, this court declines jurisdiction based on the plaintiffs' pending immigrant application and the rationale in Patel, in which a U.S. citizen waited more than eight years for a decision on a visa application filed by his non-citizen wife and children. Patel finds appropriate an order directing the consular official to either grant or deny the visa because of the consulate's unlawful "suspension" of the visa application.

In this action, the consulate rendered a decision within months of the plaintiffs' filing the non-immigrant application, and the immigrant application remains pending for less than a year. The amended complaint contains no allegation of an unlawful suspension of the immigrant application. Accordingly, Patel fails to support jurisdiction in this action.

*2. An Unlawful Presence Waiver*

Section 1361, Title 8, of the United States Code places on the visa applicant the burden of establishing eligibility to receive a visa. 8 U.S.C. § 1361. If a consular officer receives a properly completed and executed visa application, the consular officer must "either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a).[3] A refusal must conform to 22 C.F.R. § 40.6, which requires that each refusal rest "upon a ground specifically set out in the law or implementing regulations."[4] Within one year of a refusal, the applicant may attempt to overcome "the ground of ineligibility" by presenting additional evidence, upon receipt of which "the case shall be reconsidered." 22 C.F.R. § 42.81(b)-(e). An applicant for a non-immigrant visa who "is known or believed by the consular officer to be ineligible for such visa" may seek the Attorney General's waiver of inadmissibility. 8 U.S.C. § 1182(d)(3)(A).

In this action, the plaintiffs assert that "it would be absurd to require exhaustion under the facts of this case, because Defendants' proposed administrative remedy

---

[3] Section 212(a) renders inadmissible an applicant who "has been unlawfully present in the United States for one year or more[] and who again seeks admission within [ten] years of the date of [the applicant's] departure or removal from the United States . . . ."

[4] Upon refusal of a visa, Section 42.81(b) requires the creation of an "appropriate record" of the refusal, which record shall consist of (1) the consular officer's signing and dating a prescribed form and (2) the consular officer's informing the applicant of "the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."

- 8 -

(filing for an unlawful presence waiver) is precisely the unlawful determination which Plaintiffs are challenging." However, because the consular official's allegedly "unlawful determination" is immune from review (by virtue of the facially legitimate and bona fide basis for denial), requiring the plaintiffs to seek an available administrative remedy is anything but "absurd." To obtain relief, the plaintiffs must, in accord with the governing regulation, either seek reconsideration of the non-immigrant application by providing additional evidence or request a waiver of inadmissibility.

## Conclusion

Accordingly, the defendants' motion (Doc. 13) is **GRANTED** and this action is **DISMISSED** for lack of subject matter jurisdiction. The Clerk is directed to (1) terminate any pending motion and (2) close the case.

ORDERED in Tampa, Florida, on September 29, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE